FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JACOB L.,<br><br>                    Plaintiff,<br><br>        v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | NO:  4:22-CV-05124-LRS<br><br>ORDER AFFIRMING THE<br>COMMISSIONER'S DECISION |

BEFORE THE COURT are the parties' briefs.[2]  ECF Nos. 10, 18.  This

matter was submitted for consideration without oral argument.  Plaintiff is

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20,

2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is

substituted for Kilolo Kijakazi as the Defendant in this suit.

[2] Plaintiff's opening brief is labeled a Motion for Summary Judgment.  ECF No.

10.  However, the supplemental rules for Social Security actions under 42 U.S.C. §

ORDER - 1

represented by attorney Chad Hatfield.  Defendant is represented by Special

Assistant United States Attorney Michonne L. Omo.  The Court, having reviewed

the administrative record and the parties' briefing, is fully informed.  For the reasons

discussed below, Plaintiff's brief, ECF No. 10, is denied and Defendant's brief, ECF

No. 18, is granted.

## JURISDICTION

Plaintiff Jacob L. (Plaintiff),[3] filed for child's insurance benefits based on

disability on September 13, 2019, and for supplemental security income (SSI) on

August 26, 2019, alleging an onset date of June 1, 2019, in both applications.  Tr.

215-24.  Benefits were denied initially, Tr. 123-29, and upon reconsideration, Tr.

133-41.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on

September 10, 2021.  Tr. 49-76.  On September 24, 2021, the ALJ issued an

unfavorable decision, Tr. 12-32, and on July 29, 2022, the Appeals Council denied

review.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. §

1383(c)(3) and 42 U.S.C. § 405(g).

## BACKGROUND

405(g) went into effect on December 1, 2022; Rule 5 and Rule 6 state the actions

are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

[3] The Court identifies a plaintiff in a Social Security case only by the first name and

last initial in order to protect privacy.  See Local Civil Rule 5.2(c).

ORDER - 2

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1999 and was 20 years old on the alleged onset date. Tr. 18. He went to school through the eleventh grade. Tr. 240. He had a pacemaker placed in June 2019. Tr. 56. For the first year after receiving the pacemaker, he had episodes of racing heart or heart rate dropping three to four times a week. Tr. 56. He would pass out and lose consciousness. Tr. 57. After some scar tissue was removed, the episodes reduced to about two times per week. Tr. 57-58. Plaintiff testified that it takes an hour to two hours of lying down and relaxing to recover from an episode. Tr. 58. Sometimes he has episodes where his blood pressure drops but he does not pass out. Tr. 60. For those events, which occur three to four times per day, he needs to lie down for 30 minutes to an hour. Tr. 61. These episodes make it difficult for him to concentrate, cause anxiety, affect his motivation, and make him feel down. Tr. 63-64.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable

mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

ORDER - 5

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

With regard to child's insurance benefits based on disability, Title II of the Social Security Act provides disabled child's insurance benefits based on the earnings record of an insured person who is entitled to old-age or disability benefits or has died.  42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a).  The same definition of "disability" and five-step sequential evaluation outlined above governs eligibility for

disabled child's insurance benefits. *See* 42 U.S.C. § 423(d); 20 C.F.R. § 404.1520(a)(1)-(2). In addition, in order to qualify for disabled child's insurance benefits several criteria must be met. 20 C.F.R. §§ 404.350(a)(1)-(5). In this case, the relevant subsection provides that if the claimant is over age 18, the claimant must "have a disability that began before [he] became 22 years old." 20 C.F.R. § 404.350(a)(5).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 1, 2019, the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: cardiac arrythmias, status-post pacemaker implantation; depressive disorder; and anxiety disorder. Tr. 18.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 18-19. The ALJ then found that Plaintiff has the residual functional capacity to perform the full range of light work with the following additional limitations:

> He can stand and walk 4 hours total in combination in an 8-hour workday; he can never climb ladders, ropes, or scaffolds, and can frequently perform all other postural activities; he cannot have concentrated exposure to extreme cold, extreme heat, or pulmonary irritants; he can have no exposure to hazards, such as unprotected heights and moving mechanical parts; and he is limited to simple, routine, and repetitive tasks.

Tr. 20.

ORDER - 8

At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 25-26.  At step five, after considering and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as production assembler, routing clerk, and collator operator.  Tr. 26.  Thus, the ALJ determined that Plaintiff has not been under a disability as defined in the Social Security Act from June 1, 2019, through the date of the decision.  Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying child's insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for review:

1.  Whether the ALJ adequately developed the record;

2.  Whether the ALJ properly considered the medical opinion evidence;

3.  Whether the ALJ properly considered Plaintiff's impairments at step three;

4.  Whether the ALJ properly considered Plaintiff's symptom testimony; and

5.   Whether the ALJ made a legally sufficient step five finding.

ECF No. 10 at 2-3.

## DISCUSSION

**A.    Duty to Develop the Record**

ORDER - 9

Plaintiff contends the ALJ failed to meet his duty to develop the record. ECF No. 10 at 8-11. In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The regulations provide that the ALJ may attempt to obtain additional evidence to resolve any inconsistency in the evidence, when the evidence is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. §§ 404.1517, 404.1519a, 404.1520b(2), 416.917, 416.919a, 416.920b(2). An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150.

### 1. Medical Source Statement

Plaintiff argues the ALJ failed in his duty to develop the record by not keeping the record open for a medical source statement. ECF No. 10 at 10. The regulations provide that when a claimant submits a request for hearing:

> Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence unless the circumstances described in paragraph (b) of this section apply.

ORDER - 10

20 C.F.R. §§ 404.935(a); 416.1435(a); *see* Social Security Ruling (SSR) 17-4p, 2017 WL 4736894, at *3 (effective October 4, 2017).  Paragraph (b) provides that if the five-day deadline is missed, the administrative law judge will accept the evidence if, "[s]ome other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier." 20 C.F.R. §§ 404.935(b), 416.1435(b).  Examples listed include exceptional circumstances like illness, a death in the family, or a fire which destroys records, plus an exception for when, "[y]ou actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing."  20 C.F.R. §§ 404.935(b)(iv); 416.1435(b)(iv).

On September 2, 2021, more than five days before the hearing, Plaintiff's counsel submitted a letter to the ALJ indicating that they were waiting for records from an August 31, 2021, appointment with Dr. Kormerla and a Medical Report Form from Dr. Jeffery Kiki regarding RFC and limitations.  Tr. 314.  At the hearing, the ALJ inquired about the status of the records mentioned in the letter.  Tr. 54. Counsel indicated the records from Dr. Kormerla should arrive within a couple of weeks and the ALJ agreed to leave the record open for the office visit note, which ultimately was included in the record as Exhibit 15F.  Tr. 925-36.

With regard to the possible medical opinion from Dr. Kiki, upon the ALJ's inquiry, Plaintiff revealed that he had requested the opinion three to four days prior to the hearing during an appointment.  Tr. 54.  Counsel explained that "originally he

[Dr. Kiki] didn't want to do it" because he wanted the cardiologist to give the opinion.  Tr. 55.  The cardiologist clinic declined to complete the form, so Plaintiff returned to Dr. Kiki's office to request that it be completed.  Counsel stated, "we don't know if he's going to complete it or not."  Tr. 55.

The ALJ then stated, "If you want to preserve the ability to submit a post-hearing statement from Dr. Kiki, that . . . is going to require an exception to the 5-day rule.  So be sure to address that in a prompt post-hearing brief if you think one applies."  Tr. 55-56.

In the decision, the ALJ referenced the hearing testimony regarding additional evidence and noted the record was held open for Dr. Kormerla's records from Kadlec clinic, which were received and exhibited.  Tr. 15.   The ALJ then stated, "I have not, however, held the record open for submission of an assessment from Dr. Kiki."  Tr. 15.  The ALJ observed that Plaintiff's September 2, 2021, letter does not provide the information required by SSR 17-4p,[4] in particular because neither

---

[4] SSR 17-4p provides that in order to satisfy the claimant's obligation to inform the ALJ about written evidence, the claimant must provide specific enough information to identify the evidence (source, location, and dates of treatment) and show that the evidence relates to the individual's medical condition, work activity, job history, medical treatment, or other issues relevant to whether or not the individual is disabled.  If the information provided is not specific enough, the claimant has not

ORDER - 12

Plaintiff nor counsel knew at the time of the hearing whether Dr. Kiki had completed or would complete the opinion. Tr. 15. The ALJ found that as to Dr. Kiki, the September 2, 2021, letter is not a disclosure of existing evidence but of efforts to create evidence not yet in existence. Tr. 15. Furthermore, the ALJ found no good cause was shown for Plaintiff's failure to request and obtain the report in advance of the hearing. Tr. 15.

Plaintiff contends the ALJ improperly "excluded" a medical source statement on the basis of "no good cause," and asserts the ALJ "ignored" his explanation for not having Dr. Kiki's opinion. ECF No. 10 at 10. Plaintiff's argument has multiple flaws. First, Dr. Kiki's statement was not "excluded" because there is no record indicating that such a statement existed at the time of the hearing or came into existence after the hearing. Second, Plaintiff has not attempted to show "good cause" as defined in the regulations, and the ALJ reasonably found that no good cause exists. Third, the ALJ did not "ignore" Plaintiff's explanation. The ALJ acknowledged the testimony regarding Dr. Kiki's potential statement and made findings which appropriately considered the requirements of the regulations and SSR 17-4p. Lastly, Plaintiff did not comply with the ALJ's instructions to follow up with a post-hearing brief to attempt to preserve the good cause argument. The ALJ's

---

"informed" the ALJ about the evidence within the meaning of the regulations. SSR 17-4p at *3.

findings regarding submission of post-hearing records are reasonable and are based on a proper application of the law.  The ALJ did not fail in his duty to develop the record as to post-hearing evidence.

### 2. Medical Expert

Plaintiff contends the ALJ should have called a medical expert to testify regarding medical equivalence.  ECF No. 10 at 10-11.  Plaintiff cites Social Security Ruling 17-2p generally and asserts there is an "inability of the ALJ to find medical equivalence without a medical expert."  ECF No. 10 at 10.  Actually, for cases before an administrative law judge, "the responsibility for deciding medical equivalence rests with the administrative law judge."  20 C.F.R. §§ 404.1526(e)(3), 416.926(e)(3).  In order to make a finding of equivalence, the record must contain one of the following supporting a medical equivalence finding: (1) a prior administrative medical finding from a medical or psychological consultant from the initial or reconsideration levels; (2) ME evidence; or (3) a medical report from the Appeals Council medical support staff.  Social Security Ruling 17-2P, 2017 WL 3928306, at *2 (effective March 27, 2017).   SSR 17-2p also provides that if an ALJ believes that the evidence does not reasonably support a finding that the individual's impairment medically equals a listed impairment, the ALJ is *not required* to obtain ME evidence before making the step three finding that the impairment does not equal a listed impairment.  SSR 17-2p at *4 (emphasis added).  Thus, while a medical expert may provide evidence supporting an ALJ's finding of medical

ORDER - 14

equivalence, there is no requirement that an ALJ call a medical expert, particularly if the ALJ concludes the evidence does not reasonably support an equivalence finding, as in this case (*see infra*). Plaintiff has not identified any other authority suggesting that the ALJ was required to call a medical expert in this case.

Plaintiff contends that at the hearing, his counsel "indicated that he wished to question prepared ME Dr. Alpern regarding equivalence of Listing 4.05 at step three; however, the ALJ cancelled the ME's testimony with no explanation whatsoever." ECF No. 10 at 19. The transcript reflects that at the hearing, Plaintiff's counsel said, "my thought on this case is that it's an equaling for the 405 [Listing 4.05] with the tachycardia being equivalent to arrythmia happening too. Are we having Dr. Alpern?" The ALJ said, "No." Tr. 53. The transcript reflects no further discussion about a medical expert. Tr. 52-75. Nothing in this exchange creates an obligation for the ALJ to call a medical expert to discuss equivalence, as discussed above.

**B.    Medical Opinion - K. Mansfield-Blair, Ph.D.**

Plaintiff argues the ALJ failed to properly consider the opinion of K. Mansfield-Blair, Ph.D. ECF No. 10 at 11. Dr. Mansfield-Blair examined Plaintiff and completed a psychological report on January 11, 2020. Tr. 650-55. She diagnosed unspecified depressive disorder, unspecified anxiety disorder, and rule-out borderline intellectual functioning. Tr. 654. Dr. Mansfield-Blair found Plaintiff would have no difficulty performing simple and repetitive tasks, accepting

instruction from supervisors, interacting with coworkers, or dealing with the usual stress encountered in the workplace.  Tr. 654-55.  She opined that he "would have difficulty" performing detailed and complex tasks, performing work activities on a daily basis without special or added instructions, and maintaining regular attendance and completing a normal workday/workweek without interruptions from a psychiatric condition.  Tr. 654-55.

For claims filed on or after March 27, 2017, the regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  The ALJ may, but is not required, to explain how other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(1)-(5).

The ALJ found that Dr. Mansfield-Blair's examination findings generally support the assessment, and that the assessment is generally consistent with the

1   record.  Tr. 25.  The ALJ further found that Dr. Mansfield-Blair's assessment of no

2   limitations for simple and repetitive tasks, interaction with supervisors and

3   coworkers, and dealing with stress is persuasive.  Tr.  25.  However, the ALJ found

4   that the limitations quantified with "would have difficulty" are ambiguous, and

5   therefore assigned no persuasive value to those limitations.  Tr. 25.  Consistent with

6   these findings, the RFC finding includes a limitation to simple, routine, and

7   repetitive tasks with no interaction or adaptation limitations.  Tr. 20, 25.

8        Plaintiff alleges error based on the assertion that the ALJ "failed to include

9   any limitations in the RFC regarding absenteeism or the need for special/added

10  instruction without explanation."  ECF No. 10 at 12.  However, Plaintiff is incorrect,

11  as the ALJ did provide an explanation, which is that the absenteeism and extra

12  instructions statements are vague.  Tr. 25.  An ALJ may reject a medical opinion that

13  fails to specify any functional limitations or describes limitations equivocally.  *See*

14  *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding a physician's descriptions

15  of the plaintiff's limitations "as 'limited' or 'fair' were not useful because they failed

16  to specify functional limits"); *see also Harris v. Comm'r of Soc. Sec. Admin.*, 605 F.

17  App'x 612, 614 (9th Cir. 2015) (finding ALJ reasonably interpreted doctor's

18  statement that claimant would have "difficulty" working in a full-time competitive

19  work environment as equivocal).  The ALJ may rely on specific and concrete

20  conclusions regarding a plaintiff's limitations but need not rely on equivocal

21  statements or recommendations when formulating an appropriate RFC.  *See Rounds*

*v. Comm'r of Soc. Sec. Admin.*, 795 F.3d 1177, 1185-86 (9th Cir. 2015) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)). The ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds* at *id*. The court will not second-guess the ALJ's reasonable interpretation of equivocal testimony if it is supported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (2001). Thus, the ALJ reasonably found that part of Dr. Mansfield-Blair's assessment was vaguely quantified and reasonably excluded those limitations from the RFC.

Plaintiff further argues for the first time on reply that the ALJ "abdicated his duty" to translate limitations assessed by Dr. Mansfield-Blair into the RFC "with an improper boilerplate finding" and that the ALJ's finding is insufficient "as it does not say anything regarding consistency or supportability." ECF No. 19 at 5. Arguments not made in an opening brief may be deemed waived. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *see Thompson v. Commissioner*, 631 F.2d 642, 649 (9th Cir. 1980), *cert. denied*, 452 U.S. 961 (1981) ("appellants cannot raise a new issue for the first time in their reply briefs") (citing *U.S. v. Puchi*, 441 F.2d 697, 703 (9th Cir. 1971), *cert. denied*, 404 U.S. 853 (1971)). Furthermore, the Court finds no merit to these arguments as the ALJ's findings were not boilerplate and addressed supportability and consistency. Tr. 25; *see* ECF No. 10 at 11 ("The ALJ found that Dr. Mansfield-Blair's opinion was supported by her own examination findings and consistent with the record evidence."). The ALJ

reasonably found the equivocal portion of Dr. Mansfield-Blair's opinion is less persuasive, and Plaintiff does not address this part of the ALJ's reasoning.  ECF No. 10 at 11-12.  The ALJ's finding is reasonable and supported by substantial evidence.

## C.    Step Three – Listing 4.05

Plaintiff contends the ALJ erred in evaluating his cardiac impairment and syncopal episodes under Listing 4.05.  ECF No. 10 at 12-15.  At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the listings.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  The listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525, 416.925.  An impairment "meets" a listing if it meets all of the specified medical criteria.  *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990); *Tackett,* 180 F.3d at 1098.  An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan,* 493 U.S. at 530; *Tackett,* 180 F.3d at 1099.

An unlisted impairment or combination of impairments "equals" a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present.  *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. §§ 404.1526(b), 416.926(b).  "Medical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to

ORDER - 19

establish disability at step three." *Tackett*, 180 F.3d at 1099.  An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present.  *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. §§ 404.1526(b), 416.926(b).  The claimant bears the burden of establishing an impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ found that Plaintiff's cardiac impairment does not meet or medically equal listing 4.05.  Tr. 19.  Listing 4.05 is for recurrent arrhythmias:

> not related to reversible causes . . . resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.05.  Thus, to meet the listing, there must be evidence of (1) uncontrolled, recurrent episodes of cardiac syncope or near syncope, as defined by the listing, despite prescribed treatment; **and** (2) syncope or near syncope documented by certain testing.  *Id.*  The ALJ found that the record does not establish the required evidence of uncontrolled and recurrent episodes of cardiac syncope or near syncope.  Tr. 19.  The ALJ observed that during treatment, Plaintiff reported no episodes of syncope, suggesting that Plaintiff's syncope was controlled according to the definition in Listing 4.00A3f.  Tr. 19 (citing Tr. 462, 473, 873).

ORDER - 20

Furthermore, the ALJ found the medical evidence did not document the required electrocardiography or medical imaging findings coincident with the occurrence of syncope or near syncope. Tr. 19.

Plaintiff first suggests the ALJ's explanation is insufficient on its face as a "boilerplate" finding. ECF No. 10 at 13. This argument has no merit.

Next, Plaintiff argues the records cited by the ALJ do not show that his syncope was controlled. ECF No. 10 at 13. However, the Listing requires that syncope be both uncontrolled **and** recurrent. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.05. "Uncontrolled" means as "the impairment does not adequately respond to standard prescribed medical treatment" and "recurrent" means the clinical record shows that "within a consecutive 12-month period, the finding(s) occur at least three times" as separate events. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 4.00A3c, 4.00A3f. The ALJ cited records indicating Plaintiff's pacemaker was installed in June 2019 and he reported no syncope in August 2019, October 2019, and April 2020. Tr. 19 (citing Tr. 462, 473, 873). Plaintiff references a note that in October 2020 he reported he "was having trouble with lightheadedness and syncope," but he was not taking the correct amount of salt tablets. Tr. 873. He was reminded of the proper dose and a medication adjustment was made. Tr. 873. By March 2021 he was "doing much better with his lightheadedness" and had no syncopal episodes. Tr. 873. Plaintiff cites only one instance of syncope since his pacemaker was

implanted, which does not meet the definitions of "uncontrolled" and "recurrent."[5]

Plaintiff has not shown that he meets Listing 4.05 based on syncopal episodes, and

the ALJ's finding was reasonable and based on substantial evidence.

Plaintiff also argues that his lightheadedness "could be argued" to be "near

syncope" according to the definition contained in Listing 4.00F3b-c.  ECF No. 10 at

13-14.  "Near syncope" is "a period of altered consciousness, since syncope is a loss

of consciousness or a faint."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.00F3b.

However, the Listing specially indicates that, "[i]t is not merely a feeling of light-

headedness, momentary weakness, or dizziness."  *Id.*  Plaintiff's argument is without

merit.

Plaintiff further argues that his lightheadedness "could be equivalent to

syncope or near syncope."  ECF No. 10 at 13-14.  Plaintiff cites records of

tachycardia, dizzy spells, and lightheadedness and argues that a medical expert is

necessary to establish equivalence.  ECF No. 14 (citing Tr. 667-68, 810, 799-801,

928, 799, 926).  As discussed *supra*, this argument fails.

---

[5] Additionally, the ALJ later noted that Plaintiff was not fully compliant with

treatment at the time he reported a post-pacemaker episode of syncope, Tr. 23, 799,

which calls into question the Listing requirement that syncope exists "despite

prescribed treatment."

ORDER - 22

Furthermore, Plaintiff has not shown or attempted to show that the record contains documentation of the required electrocardiography or medical imaging findings coincident with the occurrence of syncope or near syncope, which is the second requirement to meet or equal Listing 4.05.  Thus, even if any of Plaintiff's arguments about equivalence with occurrences of syncope or near syncope were successful (and the Court does not so find), Plaintiff still has not established that the record supports a finding that he meets or equals Listing 4.05.  As noted *supra*, an impairment which meets or equals only some of the criteria, no matter how severe, does not qualify as disabling under the Listings.  *See Sullivan,* 493 U.S. at 530; *Tackett,* 180 F.3d at 1099.  The ALJ's step three finding is supported by substantial evidence and there is no error.

**D.    Symptom Testimony**

Plaintiff contends the ALJ improperly rejected Plaintiff's subjective symptom statements.  ECF No. 10 at 15-17.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).

"The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *9 (effective October 25, 2017); 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, at *2.

First, the ALJ found the objective evidence is mostly unremarkable and inconsistent with Plaintiff's allegations of debilitating physical and mental symptoms.  Tr. 22.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857.  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch*, 400 F.3d at 680.

The ALJ reviewed the record in detail regarding Plaintiff's cardiac impairment and mental impairments.  Tr. 21-22.  The ALJ acknowledged Plaintiff's complaints and treatment, then noted that physical exams since his pacemaker was implanted have consistently shown no distress and normal cardiovascular findings, *e.g.*, Tr. 322, 326, 331, 341, 346, 464, 671, 803, 870, 878, 931; device interrogations

show normal pacemaker function and Plaintiff's echocardiograms and other test findings are normal, *e.g.*, Tr. 327, 330-31, 476-77, 660, 692, 781, 803, 805, 810, 927; and Plaintiff's mental status exams have been largely normal, *e.g.*, Tr. 813, 898, 902, 905, 908, 910. Tr. 22-23.

Plaintiff's only argument is that the ALJ "offered little more than vague assertions that the claimant's allegations are unsupported by the objective medical evidence." ECF No. 10 at 15. However, as noted above, the ALJ discussed the objective evidence regarding each impairment with specificity and references to the record. Tr. 21-23. Plaintiff's argument is without merit and the ALJ's finding is supported by substantial evidence.

Second, the ALJ found Plaintiff's reports to treatment providers are inconsistent with his allegations of disability. Tr. 23. Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995). Plaintiff alleged significant migraines in his function report, Tr. 282-89, but the ALJ noted he has made very few reports of headaches to providers. Tr. 23 (citing *e.g.*, Tr. 882-915 with no reports of migraines or headaches). The ALJ noted that Plaintiff has made very few reports of syncope since his pacemaker was implanted; in fact, in October 2019, shortly after the pacemaker was implanted, he reported doing well overall with no concerns and in March 2021, he reported doing well from a cardiac perspective with improved lightheadedness. Tr. 23, 450, 873. Furthermore, the ALJ noted that Plaintiff

testified that he has to lie down for an hour or two each time he has an episode of light-headedness, but the medical record does not contain any similar statements to providers.  Tr. 23, 58.  The ALJ also noted that Plaintiff testified that he gets light-headed when sitting down, but he told his providers that he gets light-headed with exertion.  Tr. 23, 62; *see e.g.*, Tr. 692.  Plaintiff does not address these inconsistencies in the record.  This is a clear and convincing reason supported by substantial evidence.

Third, the ALJ found that Plaintiff's course of treatment is not consistent with disability.  Tr. 23.  Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony.  20 C.F.R. §§ 404.1529(c)(4)(iv)-(v), 416.929(c)(4)(iv)-(v).  The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination.  *Burch*, 400 F.3d at 681.  It is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility.  *See Molina*, 674 F.3d at 1113-14; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair*, 885 F.2d at 603-04.

The ALJ observed that Plaintiff has sought minimal mental health treatment.  Tr. 23.  When there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with

the level of complaints. *Molina*, 674 F.3d at 1113-14. Plaintiff has only taken over-the-counter medication for migraines. Tr. 23. The type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms as well is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 404.1529 (c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v). The lack of prescription medication is an appropriate consideration in assessing symptom statements. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). The ALJ noted Plaintiff has been noncompliant with treatment for his cardiac impairment at times. Tr. 23, 799 (noting he was not taking the recommended amount of salt tablets). Lastly, the ALJ found that Plaintiff's "failure to seek aggressive treatment thus shows he does not feel the need for such treatment, which undermines his allegations of debilitating symptoms." Tr. 23.

Plaintiff argues the ALJ did not identify any more aggressive forms of treatment that he would be expected to pursue. ECF No. 10 at 16. Yet, the ALJ suggested that it would be reasonable to expect that the severity of migraines reported in Plaintiff's function report would result in a referral to a neurologist or prophylactic medication; that disabling mental health limitations would involve more than minimal treatment; and that he would follow recommended treatment for his heart condition. *See* Tr. 23. Even if this is not an especially compelling reason, the ALJ cited other clear and convincing reasons supported by substantial evidence, so any error would be harmless. *See Carmickle*, 533 F.3d at 1162.

Fourth, the ALJ found Plaintiff has high-functioning activities of daily living and there are inconsistencies in his reports regarding his activities. Tr. 23. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ observed that while Plaintiff reported staying in a dark room in bed most of the time in his function report, he also stated he has no problem with personal care, mows the lawn, does dishes and laundry, goes outside daily, goes out alone, drives, shops in stores, manages financial accounts, and plays video games daily. Tr. 23, 282-89; *see* Tr. 651-52. The ALJ also observed an inconsistency between Plaintiff's function report indicating he spends most of his time in bed in a dark room, Tr. 283, and his reports to treating providers that he was caring for his

four-year old daughter at home, was working at a farmer's market with his family for several months, and was completing chores and working as a farm hand.  Tr. 899, 904, 909.  The ALJ concluded that Plaintiff "minimized these activities" during his hearing testimony but found too many references in the record to discount them and noted that none of the limitations Plaintiff asserted at the hearing were recorded in the medical record.  Tr. 23.

Plaintiff argues the ALJ overstated his activities and did not identify any activities inconsistent with his allegations.  ECF No. 10 at 16.  To the contrary, the ALJ explained how Plaintiff's activities undermined his allegations.  Tr. 23.  Plaintiff also argues the ALJ failed to state how his "modest" childcare activities contradict his symptom claims.  ECF No. 10 at 16 (citing *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).  However, the ALJ specifically noted that Plaintiff indicated he has been responsible for caring for his five-year old daughter for about half the day for the previous two years, "which obviously requires significant functionality and at least reliable awareness."  Tr. 23.  *See Rollins*, 261 F.3d at 857 (claimant's ability to care for young children without help may undermine claims of totally disabling pain).  This reasonably contradicts Plaintiff's allegation that he stays in a dark room most of the day.  The ALJ's finding is reasonable and this is a clear and convincing reason supported by substantial evidence.

Fifth, the ALJ found that Plaintiff's lack of documented work history suggests the explanation for his unemployment is likely caused by something other than his

medical conditions.  Tr. 24.  The claimant's work record is an appropriate

consideration in weighing the claimant's symptom complaints.  *See Marsh v. Colvin*,

792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Thomas*, 278 F.3d at 958-59; *Albidrez v.*

*Astrue*, 504 F. Supp. 2d 814, 821-822 (C.D. Cal. 2007); 20 C.F.R. §§ 404.1529,

416.929.

Plaintiff notes that he was born in 1999, suggesting his age is the reason for

his lack of work history.  ECF No. 10 at 15.  However, as Defendant observes, the

record indicates that Plaintiff stopped attending school in 2016 when he was 17

years old, three years before his alleged onset date in 2019.  ECF No. 18 at 14 (citing

Tr. 235, 240).  Defendant asserts Plaintiff only worked for 3-4 months in 2018 and

2019, ECF No. 18 at 14 (citing Tr. 226-27), but the Court notes Plaintiff earned

similar wages in 2017.  Tr. 226.  Regardless, while Plaintiff's work history is not

particularly compelling, neither is the lack of work history, given all of the

circumstances.  This does not constitute a clear and not a convincing reason for

discounting Plaintiff's symptom statements.  However, because the ALJ gave other

clear and convincing reasons supported by substantial evidence, any error is

harmless.  *See Carmickle,* 533 F.3d at 1162.

Sixth, the ALJ found that no medical professional has endorsed disabling

limitations.  Tr. 24.  It is reasonable for the ALJ to consider the fact that no treating

or examining physician has found the claimant disabled.  *See Matthews v. Shalala*,

10 F.3d 678, 680 (9th Cir. 1993); *see also Green v. Heckler*, 803 F.2d 528, 531 (9th

Cir. 1986).  Plaintiff does not address this reasoning and, as the ALJ found, Tr. 24, in combination with other factors previously discussed, this is a clear and convincing reason supported by substantial evidence.

**E.    Step Five**

Plaintiff argues the ALJ erred at step five because the vocational expert's opinion that plaintiff can return to past relevant work was based on an incomplete hypothetical.  ECF No. 10 at 17-18.  The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101.  The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence.  *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument assumes that the ALJ erred in considering Dr. Mansfield-Blair's opinion.  The ALJ's reasons for rejecting the ambiguous limitations assessed by Dr. Mansfield-Blair were legally sufficient and supported by substantial evidence, discussed *supra*.  The ALJ therefore properly excluded those limitations

ORDER - 32

from the RFC and hypothetical to the vocational expert. The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper. *See id.*; *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217-18 (9th Cir. 2005).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Brief, **ECF No. 10**, is **DENIED**.

2. Defendant's Brief, **ECF No. 18**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 4, 2024.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 33